---

## Case No. 810.

### Ex parte BALL.

[3 App. Com'r Pat. 328.]

Circuit Court, District of Columbia. June 29, 1860.

PATENTS—REISSUE—COMBINATIONS.

[1. The act of congress of July 4, 1836, § 13, (5 Stat. 122,) which empowers the commissioner of patents, upon the surrender to him of a patent, to cause a new patent to be issued when-

ever the surrendered patent shall be inoperative or invalid by reason of a defective or insufficient description or specification, or when the patentee claimed more than he had a right to claim as new, if the error has arisen by inadvertency, accident, or mistake, is to be construed liberally, according to its spirit, and not literally, as restraining and limiting the right to a reissue.]

[2. If a patent be defective or insufficient, either in the specification or in the claim, the patentee has a right, if he desires it, in the absence of fraud and deception, and on complying with the other requisites, to have a reissue for each distinct and separate part, effectually to cure the defect in the mode of stating it; and he has a right to restrict or enlarge his claim so as to give it operation, and to effectuate his invention.]

[3. If a new function is developed by the combination of different elements of the invention, this is not new matter, beyond the scope of the invention.]

Appeal [by Ephraim Ball] from the decision of the commissioner of patents, for refusing, on said Ball's application, to reissue in three divisions, A, B, and C, of the reissued patent No. 831 for improvements in mowing machines. [Reversed.]

MORSELL, Circuit Judge. In his specification he has stated under his first division, A, his claim particularly consisting of three clauses; under that of B, consisting of nine clauses; and under that of C, four clauses.

Reasons of appeal have been filed, sufficient to cover all the points of error supposed to exist in the decision of the commissioner. In the report of the commissioner in answer to the reasons, he states, in substance, that the first clause of the claim under letter "A" was deemed to have been anticipated substantially in the patent of Sylla and Adams, dated September 20, 1853, of Philo Sylla, 1855; and of Jonathan Haines, 1855. He says the same device is employed in each of these references in the same combination for connecting the end of the finger-beam to the main frame of the machine, which drags a cutting apparatus upon the ground. The lugs or hinges referred to in this clause is a well known equivalent of the hinge employed for the same purpose in the patents named, and was used in the machine of Obed Hussey, patented in 1833, for connecting the cutting apparatus to the main frame; the arrangement of this hinge with the parts to which it is connected and with which it operates in Bell's machine has been deemed to involve patentable novelty, as will appear by reference to the official letter of April 12, relating to division C.

The second clause was anticipated in the patent of Jonathan Haines, 1855, in which the front hinge that connects the front of the frame, through the medium of the drawbar, with the shoe at the heel of the finger-beam, is arranged above and in advance of the cutter and finger-beam, substantially as specified in this clause of the claim.

The third clause as stated in the official let-

ter of the 12th of April, involves two conditions relative to separate functions. The first, viz.: arranging the front hinge and the hinge at the heel of the finger-beam in a line which is parallel with the side of the frame, was found to have been anticipated in the patent of C. Wheeler, Jr., dated 1855, and substantially the same arrangement is to be seen in the other references cited and the other conditions, viz.: arranging the hinges and connections of the cutting apparatus or finger-beam so as to divide the strain between the opposite ends of the frame, and both sides of the axis of the driving wheels, was found distinctly anticipated in the patent of Wheeler and in the patent of Haines—both referred to above.

Upon a re-examination April 12, 1860, of divisions B and C of this application as amended they were regarded as embracing patentable novelty, and suggestions of amendment were made, which were believed to be necessary, in view of the condition of the art, and references were given to enable the applicant to restrict the claims, so as to embrace the substantial improvement of this applicant. For the reasons there assigned for requiring the amendments and refers to the official letters of that date. The specification of the original patent, as before stated, described the invention as an improvement on the machine patented in 1855 by Jonathan Haines, which machine embraces the substantive devices and their combinations which are employed in Ball's machine, Ball's invention being regarded as an improvement in the arrangement of the devices, and it is evident that it must be so regarded. For in comparing these two machines it is at once apparent that the principle of construction and of operation is the same, and that the difference in form and arrangement which were the invention of this applicant are distinctly seen, and of such a character as to be capable of an easy and brief description. In Haines' machine the cutting apparatus is drawn upon the ground by means of two hinged bars which connect the finger-beam to the front timber of the frame, and the end of the finger-beam which passes by the frame is connected to the rear end thereof by a curved rod or brace which is hinged to both, and the draw-bar on the inner side of the machine is hinged to the shoe in front of the finger-beam. Ball's improvement consists in taking from, rather than adding to, the Haines' machine; the finger-bar is cut off at a point outside of the hinge of the curved brace-rod at the rear of the frame, and it, together with the outside draw-bar, are thrown aside, and the inside draw-bar and lateral brace bar or rod are retained; the former is made broad and rigid where it is joined rigidly to the finger-beam instead of being hinged there like Haines', and the hinge of the lateral brace-rod is changed in its relation to the end of the finger-beam, from the position it occupies in

Haines' machine. These changes in the construction and arrangement of the front hinge and the rear hinge (at the heel of the finger-beam) in a line with each other, parallel with and beyond the frame so as to permit a greater degree of vertical movement of the finger-beam, embraces the entire novelty of Ball's improvement upon the cutting apparatus, or its connections with the frame.

In regard to the other devices claimed, which are employed upon the main frame, viz.: The hangers or supports for the crank shaft, the independent axles, the ratchet wheels, pawls and springs, the case for enclosing parts of the gearing, the balance wheels and the swiveled pitman, the references cited in the several letters, present their prior use in other patented harvesting machines, and the mere reassembling of these old devices has not been deemed a patentable improvement or an advancement in this branch of the mechanic arts. The 13th section of the act of congress approved July 4, 1836, [5 Stat. 122,] empowers the commissioner, upon the surrender to him of a patent, to cause a new patent to be issued whenever the surrendered patent shall be inoperative or invalid by reason of a defective or insufficient description or specification, or when the patentee claimed more than he had a right to claim as new, if the error has arisen by inadvertency, accident, or mistake, &c. He quotes also the 5th section of the act of 1837, [5 Stat. 192,] the 13th section of the act of 1836, and the 8th section of the act of 1837, and says: "On the first examination of this application some doubts were expressed as to the alleged invalidity of the surrendered patents, (Nos. 831 & 832,) it not appearing that an adjudication upon this question had been had, nor was there any distinct fact presented to corroborate or sustain the belief of the applicant. The office was therefore left to discover wherein an error, if any, had been committed in the description of the surrendered patents, and this too from the unnecessary, prolix, and ambiguous specifications and claims. In the official letter of February 14, it was objected that the several divisions of the subject-matter were not such as contemplated by the law, because the law authorizes the issuing of the additional patents for distinct and separate parts only; and on the final examination the same opinion was expressed in the letter of the 12th of April relating to * * * division C, that all the clauses or specifications of claims which involve the use of substantially the same invention must be embraced in one patent. It was observed that each division contained one or more clauses of claims which covered a condition or arrangement indispensable to the integrity and operative capability of the invention as an improvement upon the harvesting machine. In other words, the several patents, as solicited, would necessarily have clashed with each other, from the nature of the im-

provements as set forth, which involve modifications and arrangements, instead of new parts, separable and distinct. Different assignees of these patents would have been mutual infringers in making and using the invention. For these obvious reasons the law of reissue and division contemplated the issuing of the additional patents for the distinct and separate parts only which were new at the date of the original patent, and capable of useful application independently of the other parts which were used with them in the particular machine in which they were described or originally patented. For these reasons the office did not deem it lawful or just to the public to put forth the several patents prayed for.

It will be observed that in the last part of the just recited report of the commissioner, he gives his opinion upon the various statutes providing for reissuing patents, in which he says doubts had been expressed in a former stage of the proceedings whether the alleged invalidity of the surrendered patents should not have been previously adjudicated upon, and also that some distinct fact should have been presented to corroborate or sustain the belief of the applicant. Also that the several divisions of the subject matter were not such as contemplated by the law, because the law authorizes the issuing of the additional patents for distinct and separate parts only and on the final examination the same opinion was expressed. As a principle thus intimated affects every part of this case, I have thought it best to take the consideration of the case in this order. That is my view in the construction of those statutes. He seems to think a stricter construction should be given than I can bring myself to think is correct. In the first place, he says the additional patents must be "for distinct and separate parts only." This word "only" I have not found used in any of the statutes. It is therefore the commissioner's own inference, and implies that the statutes are to be construed as restraining literally, and not liberally according to their spirit. This right to amend or correct the defects either in the description of the schedule, or in the matter of the summary of the claim, by a surrender of the old patent, in order to a reissue of a new and perfected patent, had its existence upon the broad principles of reason and justice, coeval with the authority to grant the protective exclusive right itself. It is an implied right contained in the grant itself by the public to the inventor. The real question is between those two parties, and the limitation or exception,—fraud and deception towards the public,—and the fair and equitable limits of the original invention, embracing all combinations, new and valuable, with their functions, so as, in the best and most effectual manner, to guard and protect this right shown by the specification, drawings, and model, taken together, from invasion by pretended inventors and pirates,

and from the effect of subtle, refined distinctions. If, to do this, it should become necessary to divide and subdivide the invention, the reason is very sufficient, and within the provision of the law allowing the reissuing of separate patents. Whilst the patentee may be thus protected in his just and fair rights, it is not perceived how different assignees of the patents could be prejudicially affected, or in a worse condition than if the parts were all in one patent, an assignment of a part only, (as is not unfrequently the case.) I should think that, so far from any reason on the part of the public to complain, it would be deemed desirable that all the parts of the invention should be fully developed, that their interest also might be secured against similar dangers. It is objected by the commissioner that the integrity and operative capability of the invention would be affected. That the invention is not entire, but consists of separate and distinct parts, the first reissue and an inspection of the patent furnish unquestionable evidence. This answers the objection as to the necessity of a previous adjudication or some distinct fact to be presented. I think there was no such prerequisite of law; in the first place, the proceeding is to be an ex-parte proceeding before the commissioner as a ministerial officer, and in some respect like the proceedings in the first instance. There has been no decision sustaining such an objection, and the practice has been entirely otherwise. I think the oath of the party applicant stating the fact is enough.

That I am fully sustained in the principles I have stated, I will refer to a few decisions of the courts: In the case of Battin v. Taggert, 17 How. [58 U. S.] 83, Mr. Justice McLean, who delivered the opinion of the court as to the right of reissue, says: "So strongly was this remedy of the patentee recommended by a sense of justice and of policy, that this court, in the face of Grant v. Raymond, 6 Pet. [31 U. S.] 218, sustained a reissued and corrected patent before any legislative provision was made on the subject. The same principle had been practiced in the patent office, and had been sanctioned in the case of Shaw v. Cooper, 7 Pet. [32 U. S.] 310. The case of Grant v. Raymond, in delivering the opinion of the court, Mr. Chief Justice Marshall says: "The great object and intention of the act is to secure to the public the advantages to be derived from the discoveries of individuals, and the means it employs are the compensation made to those individuals for the time and labor devoted to these discoveries, by the exclusive right to make, use, and sell the things discovered for a limited time. That which gives complete effect to this object and intention by employing the same means for the correction of inadvertent error which are directed in the first instance cannot, we think, be a departure from the spirit and character of the act. An objection much relied on is: That after the inven-

tion has been brought into general use those skilled in the art or science with which it is connected, perceiving the variance between the specification and the machine, and availing themselves of it, may have constructed, sold, and used the machine without infringing the legal rights of the patentee, or incurring the penalties of the law. The new patent would retroact on them, and expose them to penalties to which they were not liable when the act was committed. This objection is more formidable in appearance than in reality. It is not probable that the defect * * * in the specification can be so apparent as to be perceived by any but those who examine it for the purpose of pirating the invention, they are not entitled to much favor." Whilst using this case for the purpose of showing the favored principle of this claim of reissue, I will notice another part of it to show upon what previous grounds the right should be allowed. It was a case in which the secretary of state, acting as a ministerial official, allowed the reissue. This appears to have been upon the representation of the party himself on oath stating the facts generally with his new specification as in this case, and requiring no previous adjudication. In illustrating the extent and nature of this right, the chief justice says: "If the mistake should be committed in the department of state no one would say that it ought not to be corrected. All would admit that a new patent correcting the error, and which would secure to the patentee the benefits which the law intended to secure, ought to be issued, and yet the act does not in terms authorize a new patent even in this case. Its emanation is not founded on the words of the law, but it is indispensably necessary to the faithful execution of the solemn promise made by the United States. Why should not the same steps be taken for the same purpose if the mistake has been innocently committed by the inventor himself?"

I have thus endeavored to show the origin and nature of the right, and as before estimated that the statutes referred to by the commissioner are not to be considered as restraining, but as confirmatory of the principles laid down by the supreme court in the case just recited. With respect, then, to the reissue of patents, the two sections of the act of 1836, section 13 [5 Stat. 122,] and the act of [March 3,] 1837, § 5, [5 Stat. 192,] are to be taken together in construction, and the most just and equitable extent to which the terms of the law, in its true spirit, will admit of, ought to be adopted. If his patent is defective or insufficient either in the specification or the claim, he has a right, if he desires it, in the absence of fraud and deception, on complying with the other requisites, to have a reissue of patents for each distinct and separate part, effectually to cure the defect in the mode of stating it, and he has a right to restrict or enlarge his claim so as to give it operation and to effectuate his invention. See the case of Battin v. Taggert, 17 How. [58 U. S.] 84, and the case of Hussey v. McCormick, decided by Mr. Justice McLean, 19 September, 1859, [Case No. 6,948.] The patentee, in his reissue, is entitled to every advantage within the full scope of his invention.

It may be here asked, if a new function is developed by the combination of different elements of the invention, whether this would not be new matter, and not within the invention, to which, without stopping to give my own reason for supposing it, cannot be so considered. I refer to the case just referred to, of Hussey and McCormick, to show conclusively that it would not. It may again be said that there can be no legitimate combination, as in the case now before me, where the different elements relate to separate functions. This is counter to the principles and decisions in the books on patent law, and the great current of cases in the patent office, in which patents have been granted without such an objection, and it is difficult to perceive any reason to sustain the position. There is no technicality in the term. It is of common parlance, with significant and common sense meaning. See Mr. Justice Story's opinion in the case of Carver v. Braintree Manuf'g Co., [Case No. 2,485.] In that case it was contended that the patent was not for a legitimate or patentable combination, since the improvement consisted in the assembling together of two distinct features or devices, but the judge said: "I see no objection to its being called a combination of particular forms and arrangement of structure to complete the improved rib. In a just sense, that is a combination which requires different things or different contrivances or different arrangements to be brought together to accomplish the given end." The great matter is, is it new and valuable, or is the result such? There is nothing in the objection inconsistent with the patents surrendered. It is no sufficient objection to the patentability of a combination that each separate element of which the combination is composed is covered when considered separately; this is fully settled by the late decision of the supreme court, and, indeed, according to the authorities on the subject, has long since been considered as a settled question. The application in this case for reissued subdivisions is not without good authority to sustain it. The precedents to be found in the patent office in the instances of McCormick & Hussey, and the decision of Judge McLean in the case of the latter against McCormick, are directly in point, and I think are not to be gotten over. [Case No. 6,948.]

I have carefully and fully examined and compared (with the assistance of the learned advocate on the part of the appellant) all the references particularly alluded to by the commissioner, and have found none of them

to apply to the claims of Ball in the combinations in which they are made to stand.

With the foregoing views, I think the decision of the commissioner erroneous, and ought to be reversed, and the reissue as prayed are hereby ordered and directed.